IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| GARVIN SCOTT BRIDGES, | ) | CIVIL ACTION NO. 9:14-1648-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on November 1, 2010, alleging disability beginning October 6, 2008 due to back problems and arthritis. (R.pp. 37, 175).[1] Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on August 2, 2012. (R.pp. 49-70). During the hearing, it was brought to light that Plaintiff had received unemployment benefits

---

[1]Both counsel state in their briefs that Plaintiff originally alleged disability as of October 6, 2008. Plaintiff's Brief, p. 1; Defendant's Brief, p. 2. However, Plaintiff stated in his disability application that he believed his condition did not become severe enough to keep him from working until July 15, 2009. (R.p. 175).



during 2008, 2009 and part of 2010, and Plaintiff amended his disability onset date to September 1, 2009.  (R.pp. 52-53); see also (R.p. 237).  The ALJ thereafter denied Plaintiff's claim in a decision issued October 17, 2012.  (R.pp. 34-48).  The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner.  (R.pp. 1-7).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits.  The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is generally limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was thirty-eight (38) years old on his amended alleged disability onset date, has a high school education and past relevant work experience as a truck driver. (R.p. 42). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. Further, the record shows that Plaintiff's eligibility for DIB expired on December 31, 2009. (R.p. 39). Therefore, in order to be entitled to disability benefits, Plaintiff must show that his impairments became disabling by no later than that date. See 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005).



After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of status post L4-L5 fusion and epidural fibrosis with scarring, thereby rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a reduced range of light work[3] through the date he was last insured for purposes of obtaining DIB, and was therefore not entitled to disability benefits.  (R.pp. 39-40, 42-44).

Plaintiff asserts that in reaching his decision, the ALJ erred by failing to give proper weight to the opinion of Plaintiff's treating physician, Dr. Steven Cremer, and by improperly evaluating Plaintiff's subjective testimony as to the extent of his pain and limitations and finding that Plaintiff could perform a significant number of jobs in the national economy with his impairments. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence in the case record to support the decision of the Commissioner, and that the decision should therefore be affirmed.  Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



# I.

## (Medical Evidence)

Plaintiff's medical records reflect that he ruptured a disc on January 12, 2001 while picking up a 40 pound water bottle. He underwent a laminectomy on February 27, 2001, but as his back pain continued he underwent a second fusion surgery at L4 and S1 on August 14, 2001. Post operatively he had no significant problems. (R.pp. 261-262, 522-524). On September 10, 2002 Plaintiff was seen at Winchester Musculoskeletal Medicine by Dr. Kimberly Salata, still complaining of significant pain. On examination Plaintiff was found to be well developed, well nourished, and in no acute distress. Plaintiff's ambulation was significant for a step-to-gait with the left leg, and he was only briefly able to stand on his heels and toes. However, straight leg raising and FABER maneuver[4] were both negative, and although Plaintiff had restricted lumbar range of motion, there was no muscle atrophy and he had full (5/5) strength. (R.pp. 261-262). Plaintiff does not contend that he was disabled during this time.

While the record reflects that Plaintiff remained out of work for a period of time as a result of this injury and resulting surgeries, after a further period of recovery he returned to work full time as a tractor trailer driver in 2003. (R.pp. 193, 236). Plaintiff also continued to be seen by Dr. Salata, with an "interim history" entry from May 28, 2003 noting that she had had a "lengthy discussion [with Plaintiff] regarding the results of his [functional capacity evaluation] and the inconsistencies as well was the demonstration of submaximal efforts and magnified illness behavior. [Plaintiff] indicated that his attorneys had also informed him that the results [of his FCE] were

---

[4]The FABER test (Flexion Abduction External Rotation) is a test for evidence of pathology in the sacroiliac and/or hip joints. http://en.wikipedia.org/wiki/FABER_test, March 24, 2011.

5



indicative of inconsistencies". (R.p. 254). An entry from November 20, 2003 notes that Plaintiff was approximately halfway through his real estate license preparation, and that he had done some hunting. (R.p. 252).

On June 1, 2004, which was now after Plaintiff had returned to working full time as a tractor trailer driver in December 2003, Plaintiff stated that he was "doing about the same" but that he did have some exacerbation of his pain while on a camping trip and trying to start a fire. On examination Dr. Salata found that Plaintiff had some left lumbar paraspinal spasm, but his reflexes were symmetric, his ambulation was normal, and he had full strength (5/5). (R.p. 251). On July 14, 2005, Dr. Salata noted that Plaintiff felt better since returning to work, and that he was doing more yard work and was remaining active, although prolonged standing or sitting increased his back pain. On examination Plaintiff was again found to have full strength with no muscle atrophy and normal ambulation. (R.p. 250). On January 11, 2007, Dr. Salata found some general weakness to resistence in Plaintiff's left lower extremity diffusely, but he had negative straight leg raising, his reflexes were symmetric, his sensation was intact, and he had a normal ambulation. Plaintiff exhibited decreased lumbar flexion, and there was a "slight" prominence to the left lumbar paraspinal musculature. Plaintiff indicated during this visit that "overall he has been doing fairly well". (R.p. 249). Again, Plaintiff does not contend that his medical problems were disabling during this period of time. Plaintiff apparently began seeing Dr. Cremer in 2008. (R.p. 349).

The record reflects that Plaintiff continued to work full time as a truck driver until October 6, 2008. (R.pp. 53, 175). This is when Plaintiff originally claimed that he became disabled and was no longer able to work; but see, n. 1, supra; although it is clear in the record that the actual reason he stopped working was because he was laid off due to the recession. As previously noted,



Plaintiff thereafter amended his alleged disability onset date to September 1, 2009. Therefore, in order to obtain disability benefits, Plaintiff must show that his condition substantially worsened after September 1, 2009 (his amended alleged disability onset date) from what it had previously been. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability]. Additionally, as previously discussed, in order to obtain disability benefits Plaintiff must further show that his condition was disabling by no later than December 31, 2009. However, the record reflects that after Plaintiff stopped working, he thereafter proceeded to collect unemployment benefits from the State of South Carolina in 2008, 2009 and part of 2010, thereby acknowledging that he was both able and ready to work during this time period. (R.pp. 53-54, 164, 237). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints].[5]

   With respect to Plaintiff's medical records, there is one encounter note from September 18, 2009 (which would be within the relevant time frame for establishing disability), where Plaintiff was seen by Dr. Cremer's practice for a complaint of chest congestion and "intermittent" leg pain. (R.p. 346). There is nothing to indicate any significant worsening of Plaintiff's condition or that he had a disabling impairment in this office note. To the contrary, Dr.

---

[5]Plaintiff cites to a fifty year old case, Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir. 1965), for the proposition that receipt of unemployment benefits does not in and of itself prove ability to work. However, Plaintiff's counsel acknowledged in a letter to the ALJ that, under current unemployment guidelines, a person must state that he is able to work in order to be eligible to receive unemployment benefits. (R.p. 237).



Cremer noted that Plaintiff's diagnosis (illegible)[6] was under "good control". Plaintiff thereafter had an MRI on his lumbar spine on January 28, 2010 (the month after his eligibility for benefits had expired), which found no abnormalities in the sacrum/coccyx or pelvic area. There were extensive post surgical changes of laminectomies and spinous process removals at L4 and L5 with L4-5 and L5-S1 disc fusion procedures performed previously, fairly extensive asymmetric epidural fibrosis and scarring on the right side at L5-S1 with enlargement of the S1 nerve root sleeve but with no evidence of definitive or current disc herniation, moderate bilateral epidural fibrosis and scarring at L4-5 encasing the proximal L5 nerve root sleeves but again no evidence of recurrent disc herniation (although there was some chronic posterior disc bulging and osteophytes present at the L4-5 level), and mild to moderate facet arthrosis and degeneration at L3-4 with minimal annular disc bulging. (R.pp. 388-389).

Shortly after having this MRI performed, Plaintiff went to a hospital on January 31, 2010 complaining of chronic back pain, which he described as "severe", "sharp", and "burning". On examination Plaintiff was found to have a well healed scar over his lower lumbar spine (from his previous surgeries) with no overlying erythema or redness, he had normal range of motion in his extremities with no lower extremity edema, he had no calf tenderness, no motor deficit, and no sensory deficit. Plaintiff was noted to be ambulatory, he was assessed with right sided sciatica, and advised to continue with his current medications. (R.pp. 284-285). These findings are consistent with those as far back as the treating records of Dr. Salata, and fail to show or document any significant worsening of Plaintiff's condition. Orrick, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

---

[6]Apparently "diabetes", although this is unclear.



Plaintiff was seen by Dr. Cremer on March 5, 2010 (now over two months after his eligibility for DIB had expired) for complaints of back pain and (apparently) for review of his January MRI, but there are few notations on the treatment form of any objective findings. (R.p. 342). Plaintiff returned to see Dr. Cremer on March 19, 2010, where he was noted to be complaining of pain and stiffness. Most of the hand written notes from this visit are illegible, although apparently Plaintiff did refuse some kind of procedure or medication. (R.p. 341). On April 9, 2010, Plaintiff was seen at MUSC Health on referral from Dr. Cremer, where Plaintiff advised that he was currently partially disabled from work as a machinist, but that he was seeking employment as a truck driver. Plaintiff advised the physician (unidentified) that he was suffering from pain at a level of 10 on a 10 point scale, but on examination Plaintiff was noted to move his arms and legs, that he had full (5/5) strength in both his arms and his legs, normal sensation across with light touch and position sense X4 in his extremities, and a normal symmetric gait. (R.p. 291).

On April 30, 2010, Plaintiff had an x-ray of his lumbar spine which showed bilateral pedicle screws from his surgeries at L4-L5 and S1 with vertical stabilizer bars, the two inferior screws being non-intact. Plaintiff had normal height and alignment from T12 through S1, there was no scoliosis, no spondylolysis, no instability, and no subluxation. No compression fracture or instability was noted, and he had normal motion. (R.p. 318). An office note from Dr. Cremer's practice on May 5, 2010 again indicates that Plaintiff presented complaining of pain and stiffness, and Plaintiff's medications were reviewed. (R.p. 340). A medical entry from May 28, 2010 notes that Plaintiff was starting a new job and wanted an increase in his oxycodone. (R.p. 339).

Plaintiff returned to see Dr. Cremer on June 23, 2010 as a follow-up to complaints of chronic back pain and for a review of his medication regimen. (R.p. 338). This was now six



months after his eligibility for DIB had expired. Plaintiff was seen on July 20, 2010 by Judith Hughes, a nurse practitioner in Dr. Cremer's office, who noted that Plaintiff was complaining of back pain, that his Fentanyl prescription was helping with his pain, and that he was "now back to work part-time".[7] (R.p. 337). On August 14, 2010, Plaintiff had a chest x-ray for complaints of shortness of breath, but there were no abnormalities noted. (R.p. 383).

On October 10, 2010 (almost ten months after Plaintiff's eligibility for DIB had expired), Dr. Cremer completed a medical questionnaire (physical) in which he opined that Plaintiff suffered from chronic low back pain and nerve pain, that Plaintiff was able to walk less than one hour in an eight hour work day, stand less than one hour, and sit less than one hour. He further opined that Plaintiff would only occasionally be able to lift up to ten pounds, and never lift over that amount, that he was restricted from climbing stairs or ladders, although he was not restricted from bending, and that Plaintiff was unable to work an hour eight hour day five days a week. Dr. Cremer opined that he did not expect Plaintiff's condition to improve, and that he could perform less than the full range of sedentary work. (R.pp. 329-331).[8] Plaintiff was thereafter seen by Dr. Cremer again for a follow-up on October 11, 2010, and it was noted that Plaintiff was applying for disability. (R.p. 335). On October 11, 2010, Plaintiff returned to Dr. Cremer's office (although he apparently was not seen by Dr. Cremer) to seek a refill of his oxycodone. (R.p. 331).

---

[7]The undersigned is constrained to note that, at the hearing on August 2, 2012, when the ALJ asked Plaintiff if he had "worked at all" since September of 2009, Plaintiff replied, "[a]bsolutely not, no, sir." (R.p. 55). Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints].

[8]Dr. Cremer completed a second questionnaire on December 12, 2012 (after the ALJ's decision), which essentially reiterated these findings. (R.pp. 29-31).



On December 29, 2010, consultative physician Dr. Cleve Hutson reviewed Plaintiff's medical records from before, during, and after Plaintiff's alleged disability onset date and expiration of eligibility, and gave little to no weight to Dr. Cremer's October 2010 assessment that Plaintiff could perform less than the full range of sedentary work because it was "based on the absence of objective findings from this physician". (R.pp. 324-325). On March 17, 2011, a second consultative physician, Dr. Joseph Gonzales, also reviewed Plaintiff's medical records and came to the same conclusion. (R.pp. 394-395). Further, a psychiatric review form completed that same date by state agency physician Dr. Lisa Warner found insufficient evidence to assess Plaintiff's self report of anxiety and depression. (R.pp. 396-408).

On May 4, 2011 (well over a year after Plaintiff's eligibility for DIB had expired), Plaintiff had an MRI of his sacrum/SI joints and pelvis which revealed no focal abnormalities, and that his post surgical changes remained stable from his previous MRI of January 28, 2010. This report noted that there was "[n]o apparent explanation for the [Plaintiff's] current symptoms with no defined acute fractures. (R.pp. 490-491). On May 11, 2011, Plaintiff had another MRI of his lumbar spine, which determined that Plaintiff's lumbar spine was stable when compared with the MRI from January 28, 2010, with no evidence of recurrent disc herniations or fragmentation. (R.pp. 488-489).

On August 16, 2011 Dr. Cremer wrote a letter stating that Plaintiff suffered from chronic back pain with radiculopathy and a history of ruptured disc since January 11, 2001, for which he had undergone surgery, that he requires extensive medications for pain, that he has to lay down three to four times a day to help relieve pain, that he uses a cane to walk, and that on September 1, 2009 Plaintiff was "reevaluated and diagnosed as fully disabled". Dr. Cremer further stated in this



letter that Plaintiff has "massive amounts of scar tissue around the nerves and internal hardware as well as degenerative disc disease", and that he has "failed back syndrome".[9] (R.p. 492).

On February 15, 2012, Plaintiff presented to the Waccamaw Community Hospital Emergency room complaining of "burning low back pain radiating to left leg". Examination reveal that Plaintiff's strength in all of his extremities was "strong". Plaintiff was administered medications and released. (R.p. 507, 512).

## II.

### (Treating Physician's Opinion)

After a review of the record and evidence in this case, the ALJ determined that Plaintiff had the RFC to perform light work, restricted to no climbing of stairs/ropes/scaffolds, only occasionally performing other postural activities, with a further limitation to simple, routine, repetitive tasks. (R.p. 40). Plaintiff argues that in reaching his RFC findings, the ALJ committed reversible error by failing to give controlling weight to the opinion of Dr. Cremer that Plaintiff was incapable of performing even sedentary work.[10] While Plaintiff is correct that a treating physician's opinion can be entitled to "great weight", the ALJ gave Dr. Cremer's opinion "little weight", finding that it was not supported by the medical records and evidence in this case. (R.pp. 41-42). After

---

[9]Failed Back Surgery Syndrome (FBSS) is a very generalized term that is often used to describe the condition of patients who have not had a successful result with back surgery or spine surgery and have experienced continued pain after surgery. http://www.spine-health.com/treatment/back-surgery/failed-back-surgery-syndrome-fbss-what-it-and-how-avoid-pain-after-surgery, November 4, 2009.

[10]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



careful review of the record, the undersigned can find no reversible error in the ALJ's treatment of this evidence. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

      In rejecting Dr. Cremer's opinion that Plaintiff was as limited as he indicated in his October 10, 2010 questionnaire and October 16, 2011 letter, the ALJ noted Dr. Cremer's own records showing that when Plaintiff was seen on September 18, 2009 (the only record from within the applicable time period for obtaining disability), there was no indication of any significant worsening of his condition and that Plaintiff's only complaint was of congestion and "intermittent" leg pain. The ALJ further noted that Dr. Cremer records after that time reflected conservative treatment of Plaintiff's condition with medications and that Plaintiff was even exercising (including swimming) and had returned to part time work. (R.pp. 41-42, 337, 342, 346). Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes].

      As previously noted, Plaintiff had all of the impairments shown in his medical records prior to his alleged disability onset date, and there is no indication in Dr. Cremer's records of any significant worsening of his condition after that date, or indeed anytime prior to December 31, 2009, when his edibility for DIB expired. Orrick, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability]. While



Dr. Cremer references in his 2010 and 2011 opinions that Plaintiff's condition is due to his history of a ruptured disc since January 11, 2001 (seven years prior to Dr. Cremer first having seen the Plaintiff, and following which Plaintiff was able to return to his full time work), and that Plaintiff was "reevaluated and diagnosed as fully disabled" on September 1, 2009, there are no contemporary records from Dr. Cremer's office documenting any such diagnosis, nor do his medical records reflect any objective findings to support such a retrospective diagnosis.  Hence, there is no evidence to show that Dr. Cremer's October 2010 and August 2011 opinions as to the extent of Plaintiff's limitations were based on anything other than Plaintiff's own subjective statements.  Cf. Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]; see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]; see also Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [generally conservative treatment not consistent with allegations of disability]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) [The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

   Further, in addition to the paucity of evidence from Dr. Cremer's own practice to support the degree of limitation claimed by Plaintiff and opined to by Dr. Cremer, the ALJ also cited to the contrary medical findings of the Waccamaw Community Hospital, Plaintiff's MRI's and x-rays, as well as the functional capacity assessments of the state agency physicians, showing that examinations of Plaintiff's lower extremities revealed normal bulk, tone and strength with equal reflexes and pulses, objective evidence of only mild disc degeneration and annular bulging of the



lumbar spine and scarring (which the ALJ accounted for in his RFC finding), and that there was an "absence of objective findings" to support Dr. Cremer's opinion. (R.p. 42); see (R.pp. 284-285, 291, 318, 324-325, 388-389, 394-395, 488-491, 507, 512). These medical records and findings provide substantial evidence to support the findings and conclusions of the ALJ. See Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].

        After a review of the evidence, the ALJ determined that Plaintiff could perform at least light work restricted by the limitations noted in the decision, and that these restrictions would accommodate Plaintiff's condition consistent with the medical evidence documenting his impairments, while also giving Plaintiff every benefit of the doubt (including considerations of Plaintiff's complaints of associated pain) in determining an appropriate RFC. See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding]. Again, there is no reversible error shown with respect to these findings, nor does the undersigned find that the ALJ committed any reversible error in his consideration of the opinion of Dr. Cremer consistent with the totality of the evidence in the record. Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the



conclusions reached are rational]; <u>Krogmeier</u>, 294 F.3d at 1023 ["[W]hen a treating physician's

opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less

weight" (citations omitted) ]; <u>cf. Craig</u>, 76 F.3d at 589-590 ["There is nothing objective about a

doctor saying, without more, 'I observed my patient telling me she was in pain'"]; <u>Poling v. Halter</u>,

No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather

than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing

<u>Kasey v. Sullivan</u>, 3 F.3d 75, 79 (4th Cir. 1993).

Therefore, this claim is without merit. <u>Gross</u>, 785 F.2d at 1166 [The mere presence

of impairments does not automatically entitle a claimant to disability benefits, there must be a

showing of related functional loss]; <u>Andreolli v. Comm'r of Soc. Sec.</u>, 2008 WL 5210682, at *4

(W.D.Pa. Dec. 11, 2008) ["It is well settled that a claimant need not be pain-free or experiencing no

discomfort in order to be found not disabled" (citing <u>Welch v. Heckler</u>, 808 F. 2d at 270)]; <u>Smith</u>

<u>v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with

the ALJ, not with a reviewing court"]; <u>Plummer v. Astrue</u>, No. 11-6, 2011 WL 7938431, at * 5

(W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing

the degree to which his impairment limits his RFC], <u>adopted by</u> 2012 WL 1858844 (May 22, 2012),

aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).

### III.

### (Credibility Determination)

With respect to Plaintiff's contention that the ALJ committed reversible error in his

evaluation of Plaintiff's subjective testimony and credibility, this argument was also without merit.

The ALJ specifically discussed Plaintiff's testimony, but while concluding that Plaintiff did have a



medically determinable impairment that could reasonably be expected to cause the symptoms Plaintiff alleged, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent inconsistent with the RFC set forth in the decision. (R.pp. 40-41). In reaching this conclusion, the ALJ noted that he had considered Plaintiff's testimony including that he had continued to seek employment, as well as the medical records and evidence previously discussed. That is exactly what he is supposed to have done. See SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) [Where a claimant seeks to rely on subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Further, when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d 595 ["Although a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96–7p.]; Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a



disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

    With respect to Plaintiff's testimony, the ALJ noted Plaintiff's statements that he had "constant back pain" which required daily medications, that he engages in very little physical activity, and is even unable to do any household chores, and evaluated and contrasted that testimony with the objective medical evidence of generally mild findings, normal range of motion in his extremities, that Plaintiff himself had reported that he was exercising including swimming and had even returned to part time work, as well as that he continued to seek employment and held himself out as being able to work during the relevant time period.  (R.pp. 40-42).  See generally, Anderson v. Barnhart, 344 F.3d 809, 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008) [Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"]; Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984) ["[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." (citation omitted)].



18

In sum, the ALJ did not conduct an improper credibility analysis, nor does his decision otherwise reflect a failure to properly consider the affect Plaintiff's impairments had on his ability to work. Rather, the record and evidence cited by the ALJ provides substantial evidence to support the ALJ's findings as to the extent of Plaintiff's limitations, and the undersigned can therefore find no reversible error in the ALJ's evaluation of Plaintiff's subjective testimony. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

While Plaintiff seeks to have this Court give precedence to his testimony as opposed to the other evidence of record and substitute its own judgment for that of the ALJ, that is not the proper standard for review in a Social Security case. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Guthrie, No. 10-858, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are



supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].  Therefore, this argument is without merit.

**IV.**

**(Vocational Expert Testimony)**

Plaintiff's final claim of error is that the ALJ relied on VE testimony to determine that he could perform jobs that existed in significant numbers in the national economy with his impairments, but that this testimony and opinion was given in response to an incomplete hypothetical.  This argument is without merit.

The record reflects that in determining whether Plaintiff could perform gainful employment with the degree of impairment set forth in the decision, the ALJ obtained testimony from a Vocational Expert who testified that an individual of Plaintiff's age, education, and work experience could perform several jobs that exist in the national economy with his limitations.  (R.pp. 40, 66-68). Plaintiff's claim of error is that it was improper for the ALJ to rely on the VE's testimony based on this hypothetical because it did not take into account all of Plaintiff's impairments as established by the record.  However, the ALJ's hypothetical did account for all credibly established medical findings in the record as determined by the ALJ's RFC finding, which the undersigned has previously found is supported by substantial evidence.

The ALJ was not required to include limitations in his hypothetical that he did not find were warranted or shown in the evidence.  Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].  Therefore, the ALJ's reliance on the VE testimony in finding that Plaintiff



20

could perform the jobs identified by the VE with his limitations is not grounds for reversal of the decision.  Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]; Trenary, 898 F.2d at 1364 [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Plummer, 2011 WL 7938431, at * 5 [It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx.  795 (4th Cir. 2012); Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].  This claim is without merit.

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.



The parties are referred to the notice page attached hereto.

_____

April 13, 2015                              Bristow Marchant
Charleston, South Carolina                  United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

